VERTEFEUILLE, J.
**488 The marriage of the plaintiff, Ruth Cohen, and the defendant, Franklin Cohen, was dissolved in 2002. At that time, the trial court, Hon. Dennis Harrigan , judge trial referee, incorporated their separation agreement, which contained a provision requiring the defendant to pay alimony to the plaintiff, into the divorce decree. In 2010, the defendant filed a motion to modify the alimony provision of the divorce decree on the ground that his income had declined significantly. The trial court, Shay, J., granted that motion by way of a corrected memorandum of decision in 2012. In 2013, the plaintiff filed a motion to modify the 2012 modification order on the ground that the defendant's income had substantially increased. The trial court, Colin, J. , granted that motion. The defendant **489 then filed this appeal[1] claiming, among other things, that Judge Colin improperly (1) based his conclusion that there had been a significant change in the parties' financial circumstances warranting a modification of the 2012 modification order on a comparison of their current circumstances to their circumstances at the time of the divorce decree, instead of their circumstances at the time of the previous 2012 modification order, (2) considered the plaintiff's motion for modification when it was "legally insufficient" on its face, (3) considered certain evidence in support of his conclusion that the 2012 modification order should be modified, and (4) rendered an illegal "lifetime profit sharing order." We reject these claims and affirm the judgment of the trial court.
The record reveals the following procedural history and facts that were found by Judge Colin or are undisputed. The marriage of the parties was dissolved on January 4, 2002, after twenty-seven years of marriage. At the time of the dissolution judgment, the plaintiff was unemployed and had no income. The defendant was employed in the commercial mortgage business and had a net weekly income of $2961.98. The parties entered into a separation agreement, which the trial court, Hon. Dennis Harrigan , judge trial referee, approved and incorporated into the divorce decree. The separation agreement provided in relevant part that, "[c]ommencing January 1, 2002, the [defendant] shall pay during his lifetime to the [plaintiff], as alimony, 33 1/3 [percent] of the first $180,000 of the [defendant's] gross income from his employment and 33 1/3 [percent] of [one half] ... of the income actually received from his limited partnership interest in [various entities] and 25 [percent] of the next $200,000 in earnings and 38 **490 [percent] of the next $370,000 in earnings ...." The agreement further provided that "[t]he [plaintiff] shall not be entitled to share in [the] earnings of the *96 [defendant] in excess of $750,000 in any calendar year and in no event shall receive more than $250,000 as her share of commission payments in any calendar year." The alimony payments were to continue until the plaintiff's death, remarriage or cohabitation.
As the result of poor market conditions during the years 2008, 2009 and 2010, the defendant's income was significantly reduced. In 2010, he filed a motion to modify the alimony provision of the divorce decree by reducing the percentage of his income that he was required to pay the plaintiff. After an evidentiary hearing, the trial court, Shay, J., found that there had been a substantial change in circumstances since the time of the divorce decree because the defendant's current net income had decreased to $1373.95 per week, and the plaintiff's net income had increased to $945.15 per week. Judge Shay granted the defendant's motion for modification and ordered that the defendant pay the plaintiff $250 per week until her death or remarriage.
In September, 2011, the plaintiff filed a motion to open and vacate that modification order on the basis of new evidence showing that the defendant's income was actually $8805.63 per week, not $1137.95 as Judge Shay had found. The plaintiff contended that, in light of the cyclical nature of the defendant's business, alimony expressed as a percentage of the defendant's income was more appropriate than a set dollar amount. The defendant agreed that an award based on a percentage of his income was appropriate. After an evidentiary hearing, Judge Shay issued a corrected memorandum of decision, finding that the plaintiff's current net income from employment was $392.09 per week and her investment income was $581 per week, for a total of $973.09 per week, and the defendant's current net income was **491 $1310.34 per week. Judge Shay further found, however, that the defendant's net income should be calculated on the basis of his income over a two year period and that, using that method, his earning capacity was $158,420 per year, or a net income of $2163 per week. On that basis, Judge Shay ordered the defendant to pay the plaintiff $2750 per month until her death or remarriage (2012 modification order).
In November, 2013, the plaintiff filed a motion to modify the 2012 modification order on the ground that the defendant's earnings in 2012 were more than $293,000, substantially in excess of his earning capacity of $158,420 as found by Judge Shay. In her motion, the plaintiff pointed out that the original alimony provision of the divorce decree had required the defendant to pay the plaintiff a percentage of his income. The defendant objected to the motion on the ground that it would be improper for the court to consider the divorce decree because, when considering a motion for modification of alimony orders pursuant to General Statutes § 46b-86, the trial court's "inquiry is necessarily confined to a comparison between the current conditions and the last court order." Borkowski v. Borkowski , 228 Conn. 729, 738, 638 A.2d 1060 (1994). The defendant further contended that a modification based solely on an increase in his income would be improper under this court's holding in Dan v. Dan , 315 Conn. 1, 14, 105 A.3d 118 (2014), that "an increase in the income of the supporting spouse, standing alone, is not a sufficient justification to modify an alimony award."
After an evidentiary hearing, the trial court, Colin J. , found that the plaintiff had a current net income from employment of $438.[2] In addition, she received $284 per *97 week in social security benefits and $180 per month **492 from a pension, for a total weekly income of $763.54. The defendant had a current net weekly income of $6765. The trial court found that there had been a substantial change in circumstances in that "the incomes of both parties have substantially increased." The court then addressed the defendant's argument that, under Dan v. Dan , supra, 315 Conn. at 14, 105 A.3d 118, an alimony modification cannot be based solely on an increase in the supporting spouse's income. The court concluded that Dan was distinguishable because (1) there had been no intervening modification of the original alimony award in Dan , (2) the supported spouse in Dan was seeking a modification that would have increased the amount that she was receiving to more than the amount of original alimony award, and (3) the intent of the original award in Dan was to allow the supported spouse to maintain the standard of living that she had enjoyed during the marriage, but, in the present case, the intent of the original award was to allow the plaintiff to share in the defendant's post-divorce earnings.
The court then noted that, under Dan , "[w]hen the initial award was not sufficient to fulfill the underlying purpose of the award ... an increase in the supporting spouse's salary, in and of itself, may justify an increase in the award. For example, if the initial alimony award was not sufficient to maintain the standard of living that the supported spouse had enjoyed during the marriage because the award was based on a reduction in the supporting spouse's income due to unemployment or underemployment as a result of an economic downturn, and, after the divorce, the supporting spouse's income returns to its previous level, a modification might well be justified." Dan v. Dan , supra, 315 Conn. at 15-16, 105 A.3d 118. After concluding that the 2012 modification order was "no longer sufficient to fulfill the underlying purpose of the original alimony award, namely, to have the plaintiff share in the defendant's fluctuating **493 income from employment," the trial court granted the plaintiff's motion for modification. The court ordered the defendant to pay the plaintiff "25 [percent] of the first $500,000 of the [his] gross income from employment. The defendant shall make minimum payments of $3333.33 per month on the first of each month, in advance. Then, if, as and when the defendant receives gross income from employment over $160,000 in any year, he shall pay to the [plaintiff] 25 [percent] of the gross income from employment within ten business days of the defendant's receipt of gross income from employment in excess of $160,000. The plaintiff shall not be entitled to share in the defendant's gross income from employment in excess of $500,000; as a result, the maximum amount of alimony that the plaintiff can receive under this order is $125,000 per year." The payments were to continue until the plaintiff's death or remarriage, and the order was retroactive to January 1, 2014.
On appeal, the defendant contends that the trial court improperly (1) based its conclusion that there had been a significant change in the parties' financial circumstances, warranting a modification of the 2012 modification order, on a comparison of their current circumstances to their circumstances at the time of the divorce decree, instead of their circumstances at the time of the previous 2012 modification order, (2) considered the plaintiff's motion for modification when it was "legally insufficient" on its face, (3) considered certain evidence in support of its conclusion that the 2012 modification order should be modified, and (4) rendered an illegal "lifetime profit sharing order." We reject all of these claims.
*98 I
We first address the defendant's claim that the trial court improperly considered the parties' financial circumstances **494 at the time of the divorce decree when it determined that (1) there was a substantial change in circumstances warranting consideration of the plaintiff's motion for modification, and (2) the 2012 modification order should be modified. We begin our analysis with a review of the legal principles governing the modification of alimony awards. "It is ... well established that when a party, pursuant to § 46b-86, seeks a post-judgment modification of a dissolution decree ... he or she must demonstrate that a substantial change in circumstances has arisen subsequent to the entry of the [decree]." Borkowski v. Borkowski, supra, 228 Conn. at 736, 638 A.2d 1060. "Once a trial court determines that there has been a substantial change in the financial circumstances of one of the parties, the same criteria that determine an initial award of alimony ... are relevant to the question of modification." (Internal quotation marks omitted.) Id., at 737, 638 A.2d 1060.
"The power of the trial court to modify the existing order does not, however, include the power to retry issues already decided ... or to allow the parties to use a motion to modify as an appeal. ... Rather, the trial court's discretion includes only the power to adapt the order to some distinct and definite change in the circumstances or conditions of the parties.
"Therefore, although the trial court may consider the same criteria used to determine the initial award without limitation ... in doing so, its inquiry is necessarily confined to a comparison between the current conditions and the last court order. To permit the trial court to reconsider all evidence dating from before the original divorce proceedings, in determining the adjustment of alimony, would be, in effect, to undermine the policy behind the well established rule of limiting proof of the substantial change of circumstances to events occurring subsequent to the latest alimony order-the avoidance of relitigating matters already settled." (Citations **495 omitted; footnote omitted; internal quotation marks omitted.) Id., at 738, 638 A.2d 1060.
In the present case, the defendant contends that the trial court ignored these principles when it concluded that there had been a substantial change in circumstances, which is "the threshold predicate for the trial court's ability to entertain [the plaintiff's] motion for modification [of alimony] ...." Id., at 737, 638 A.2d 1060. Specifically, the defendant points out that the court found that "the incomes of both parties have substantially increased." Because the plaintiff's income had, in fact, decreased from $973.09 per week at the time of the 2012 modification order to $763.54 per week in 2015, the defendant contends that the trial court could only have been comparing the plaintiff's current income to her income at the time of the divorce decree, which was zero. It follows, he further contends, that the trial court must also have been comparing the defendant's current income to his income at the time of the divorce decree when, under Borkowski , the court should have compared the financial circumstances of the parties at the time of the 2012 modification order to their current circumstances. See Borkowski v. Borkowski , supra, at 738, 638 A.2d 1060 (when determining whether there are substantially changed circumstances for purposes of establishing threshold predicate for consideration of motion for modification, trial court's "inquiry is necessarily confined to a comparison between the current conditions and the last court order").
*99 We agree with the defendant that, when the trial court was considering whether there had been a substantial change in circumstances, it should have compared the parties' current financial circumstances in 2015 to their circumstances as found by Judge Shay in the 2012 modification order and not their circumstances at the time of the divorce decree. Although the trial court's memorandum of decision is not entirely clear on this point, **496 we also agree that it is reasonable to conclude that the trial court's statement that the plaintiff's income had substantially increased indicates that the court was comparing her current income to her income at the time of the divorce decree.[3] Even if we were to assume, however, that that was the case, we conclude that any error was harmless.
The trial court expressly stated that "the defendant's income has increased substantially and the [2012 modification order] is no longer sufficient to fulfill the underlying purpose of the original alimony award ...." (Emphasis added.) It is clear, therefore, that the court believed that the 2012 modification order was sufficient to fulfill the underlying purpose of the original alimony award, to the extent possible under the changed circumstances, at the time that it was rendered. If that was no longer the case, it could only have been because of the change in the parties' financial circumstances since the date of the 2012 modification order , the most significant of which was, by far, the increase in the defendant's income.[4] Accordingly, even if the trial court's threshold finding that there was a substantial change in circumstances was improperly based on a comparison of the parties' financial circumstances at the time of the divorce decree with their current circumstances, it is clear that the court would have reached the same conclusion if it had properly compared the parties' financial circumstances at the time of the 2012 modification order with their current circumstances.
**497 With respect to the defendant's claim that the trial court improperly based its modification order on a comparison between the parties' financial circumstances at the time of the divorce decree and their current circumstances, we disagree. Judge Shay found in the 2012 modification order that there had been a substantial change in circumstances since the date of the divorce decree in part because "the [plaintiff] is now employed and has additional income from investments ...." Partly on the basis of this change in circumstances, Judge Shay reduced the alimony award from a percentage of the defendant's income, capped at $250,000, to a flat payment of $2750 per month. Thus, when Judge Colin stated in his 2015 decision that any alimony modification should reflect "the substantial change in the [plaintiff's] income," presumably since the date of the divorce decree, he was merely recognizing the continuing validity of Judge Shay's holding that the substantial increase in the plaintiff's income since the date of the divorce decree warranted a reduction in the original alimony award. It does not follow that Judge Colin's order modifying the 2012 modification order by increasing the alimony payment to a percentage *100 of the defendant's income, with payments capped at $125,000, was based on a comparison of the defendant's income at the time of the divorce decree with his current income. Rather, as we have indicated, because Judge Colin believed that the 2012 modification order was sufficient when it was rendered to fulfill the purpose of the alimony award in the divorce decree, to the extent possible, his modification of the 2012 modification order could only have been based on changes in the parties' financial circumstances since the date of that order, the most significant of which was the threefold increase in the defendant's income.
Finally, to the extent that the defendant contends that, after Judge Shay issued the 2012 modification **498 order, the trial court was barred under Borkowski from considering the purpose of the original alimony provision in the divorce decree when it was crafting an equitable modification, we disagree.[5] The defendant effectively contends that, when Judge Shay issued the 2012 modification order, he intended to change the underlying purpose of the alimony award and that the new purpose should be controlling for purposes of all future motions for modification. There is an important distinction, however, between changing the purpose of an original alimony award when ruling on a motion for modification, which is generally prohibited, and finding that a modification of alimony is required because changed circumstances have made it impossible to fulfill the underlying purpose of the original award, which is a proper function of the court. See Dan v. Dan , supra, 315 Conn. at 17, 105 A.3d 118 (court's ruling on motion for modification should not change underlying purpose of initial alimony award but may consider that underlying purpose); Borkowski v. Borkowski , supra, 228 Conn. at 738, 638 A.2d 1060 ("[t]he power of the trial court to modify the existing order does not ... include the power to retry issues already decided"). Because the court is not permitted to change the underlying purpose of the original alimony award by way of modification, the purpose of a modification is controlling only as long as the circumstances requiring that modification continue to be present. Accordingly, if a trial court considering a subsequent motion for modification determines that the circumstances justifying a previous modification have ceased to exist, then the underlying purpose of the original alimony award still controls. We therefore conclude that the trial court properly considered the underlying purpose of the original alimony award upon determining that the **499 changed circumstances justifying the 2012 modification order no longer existed.
II
We next address the defendant's claim that the plaintiff's motion for modification was "legally insufficient" on its face because it alleged only that the defendant's income had significantly increased and did not allege that the 2012 modification order was insufficient to fulfill the underlying purpose of the original alimony award or that there were other exceptional circumstances justifying a modification, as required by Dan . We disagree.
In support of this claim, the defendant points out that this court held in Dan that an increase in income, standing alone, does not justify a modification of an alimony award unless "the initial award was not sufficient to fulfill the underlying *101 purpose of the award"; Dan v. Dan , supra, 315 Conn. at 15-16, 105 A.3d 118 ; or if other exceptional circumstances exist. Id., at 17, 105 A.3d 118. As we recognized in Dan , however, "it is well established that an increase in the income of the paying spouse, standing alone, is sufficient to justify reconsideration of a prior alimony order pursuant to § 46b-86...." (Citation omitted; emphasis in original.) Id., at 9, 105 A.3d 118. In other words, a party seeking modification of an alimony award need only claim in the motion for modification that there has been a substantial change in circumstances to warrant reconsideration. We have never required a party seeking modification to cite in the motion for modification itself all of the reasons why the substantial change in circumstances justifies a modification or the case law supporting the motion. Accordingly, we conclude that the plaintiff's motion for modification, which alleged that there had been a substantial change in circumstances because the defendant's income had substantially **500 increased since the 2012 modification order, was not legally insufficient.
III
We next address the defendant's claim that, even if the plaintiff's motion for modification was legally sufficient, the trial court improperly considered certain evidence to support its conclusion that the purpose of the original alimony award was "to address the fluctuating nature of the defendant's income and to have the plaintiff share in that income [from employment] ...." Specifically, the defendant contends that (1) the trial court should not have considered extrinsic evidence of the parties' intent when they entered into the separation agreement without first finding that the agreement was ambiguous; see Parisi v. Parisi , 315 Conn. 370, 383, 107 A.3d 920, 929 (2015) ("[w]hen only one interpretation of a contract is possible, the court need not look outside the four corners of the contract" [internal quotation marks omitted] ); and (2) the court improperly took judicial notice of the contents of the court file. See Moore v. Moore , 173 Conn. 120, 122, 376 A.2d 1085 (1977) ("[A]uthorities have drawn a distinction between 'legislative facts,' those which help determine the content of law and policy, and 'adjudicative facts,' facts concerning the parties and events of a particular case. The former may be judicially noticed without affording the parties an opportunity to be heard, but the latter, at least if central to the case, may not."). We disagree.
As we have indicated, this court held in Dan that the trial court should consider the purpose of the original alimony award when determining whether an increase in the supporting spouse's income, standing alone, justifies a modification. See Dan v. Dan , supra, 315 Conn. at 11-15, 105 A.3d 118. In the present case, the original alimony award in the separation agreement unambiguously provided **501 that the defendant would pay the plaintiff a percentage of his income, up to a maximum of $250,000 annually. The agreement did not indicate, however, whether the purpose of the award was to allow the plaintiff to continue to share in the defendant's standard of living after the divorce or, instead, to provide her with the same standard of living that she had enjoyed during the marriage. If the defendant's income prior to the divorce had been steady over a long period of time and the parties anticipated that he would have a similar income for the foreseeable future, it would be reasonable to conclude that the purpose of the original alimony award was simply to maintain the plaintiff's standard of living. On the other hand, if the defendant's income had fluctuated widely from year to year before the divorce, it would be reasonable to conclude that the purpose of the *102 award was to allow the plaintiff to continue to share in the defendant's income after the divorce, in both bad times and good times. Because the separation agreement itself was silent on this point, we conclude that the trial court properly considered extrinsic evidence, including the defendant's testimony at the hearing on the plaintiff's motion for modification in 2015 that his income fluctuated widely from year to year on the basis of business conditions.
The defendant also claims that the trial court improperly took judicial notice of certain items in the court file, specifically, the plaintiff's 2002 financial affidavit. It is well established, however, that "[t]he trial court has the power to take judicial notice of court files of other actions between the same parties." In re Mark C. , 28 Conn.App. 247, 253, 610 A.2d 181, cert. denied, 223 Conn. 922, 614 A.2d 823 (1992). To the extent that the defendant contends that it was improper for the court to do so under the specific circumstances of this case because the court was barred from considering any evidence that predated the 2012 modification order, **502 we have already concluded that the trial court was authorized to consider the underlying purpose of the original alimony award. See part I of this opinion. Accordingly, we conclude that it was proper for the court to take judicial notice of items in the court file that shed light on that purpose.
IV
Finally, we address the defendant's claim that "[t]he trial court entered an impermissible lifetime profit sharing order based on its finding that the 'underlying purpose of the original alimony award [was] ... to have the plaintiff share in [the defendant's] fluctuating income [from employment],' rather than to meet her needs." We disagree.
As a preliminary matter, we note that, inasmuch as the trial court was bound by the purpose of the original alimony award when determining whether a modification was justified; see Dan v. Dan , supra, 315 Conn. at 15-16, 105 A.3d 118 ; the defendant's claim that the modification order had an unlawful purpose effectively constitutes a collateral attack on the original alimony award.[6] Collateral attacks on judgments are strongly disfavored. See, e.g., Investment Associates v. Summit Associates, Inc. , 309 Conn. 840, 855, 74 A.3d 1192 (2013). Nevertheless, because the defendant cannot prevail on this claim, and in order to provide future litigants with guidance on this issue, we address it. Cf. Blumberg Associates Worldwide, Inc. v. Brown & Brown of Connecticut, Inc. , 311 Conn. 123, 158 n.28, 84 A.3d 840 (2014) ("[r]eviewing an unpreserved claim when the party that raised the claim cannot prevail is appropriate because it cannot prejudice the opposing party and such review presumably would provide the party who failed to properly **503 preserve the claim with a sense of finality that the party would not have if the court declined to review the claim").
This court concluded in Dan v. Dan , supra, 315 Conn. at 11, 105 A.3d 118, that "[t]here is little, if any, legal or logical support ... for the proposition that a legitimate purpose of alimony is to allow the supported spouse's standard of living to match the supporting spouse's standard of living after the divorce, when the supported spouse is no longer contributing to the supporting spouse's income earning efforts." (Emphasis in original.) Id., at 11, 105 A.3d 118. The specific issue that was *103 before this court in Dan , however, was whether an increase in the supporting spouse's income, standing alone, justifies increasing an alimony award when the purpose of the alimony award was to allow the supported spouse to continue the standard of living that she enjoyed during the marriage .[7] Id., at 18-19, 105 A.3d 118. We did not intend to suggest in that case that parties are barred as a matter of law from voluntarily entering into a divorce agreement containing an alimony provision that is intended to allow the supported spouse to share, to any extent whatsoever, the supporting spouse's standard of living after the divorce. Indeed, there are circumstances under which both the supported spouse and the supporting spouse might reasonably **504 desire such an arrangement. For example, when, as in the present case, the level of the supporting spouse's income is highly sensitive to market conditions, the supporting spouse might reasonably agree to an arrangement that allows the supported spouse to share in the benefits of particularly good years in order to avoid being required to make a substantial flat payment in bad years. Such an arrangement would also avoid the need for frequent motions for modification based on the supporting spouse's fluctuating income. If the supporting spouse anticipates that there may be a significant increase in his average annual income after the divorce, he can protect himself by including an annual cap on alimony payments, as the defendant did in the present case.[8] Accordingly, we reject the defendant's claim that Dan held, as an inviolable rule of law, that it is not a legitimate purpose of alimony to allow the supported spouse to share the supporting spouse's standard of living after the divorce, even to a limited extent. Rather, the main teachings of Dan are that the ordinary , but not necessarily exclusive, purposes of alimony are either to allow the supported spouse to continue enjoying the standard of living that he or she enjoyed during the marriage or to allow the supported spouse to become self-sufficient; id., at 10-11, 105 A.3d 118 ; and that any modification of an alimony award should implement the original purpose of the award to the extent possible.[9] See id., at 15-16, 105 A.3d 118.
The defendant points out, however, that this court in Dan presumed that the alimony award in that case, which was based on a voluntary agreement between **505 the parties and included a percentage of any bonus income that the defendant received, as *104 well as a flat payment of $15,000 per month; see Dan v. Dan , supra, 315 Conn. at 4, 105 A.3d 118 ; was intended to allow the plaintiff to maintain the standard of living that she enjoyed during the marriage, not to allow her to share the defendant's standard of living after the divorce. See id., at 18, 105 A.3d 118 ("it is reasonable to conclude, in the absence of any suggestion to the contrary, that the purpose of the original alimony award, which was based on the stipulation of the parties ... was to allow the plaintiff to maintain the standard of living that she enjoyed during the marriage"). Because the award in the present case was also based on a percentage of his income, the defendant contends, the trial court in the present case should have made the same presumption.
As we have explained, however, the plaintiff in Dan made no claim that the purpose of the alimony award was to allow her to share the defendant's standard of living after the divorce, but claimed only that she was no longer able to enjoy the standard of living that she had enjoyed during the marriage. See footnote 7 of this opinion. Moreover, the plaintiff in Dan was not attempting to reinstate the provision of the original alimony award that required the defendant to pay her a percentage of his bonus income, which was the provision that allowed the plaintiff's income to track the defendant's income after the divorce, at least to some extent. See id., at 4-5, 105 A.3d 118. Rather, she was attempting to increase the defendant's flat alimony payment on the ground that his base salary had increased from $696,000 at the time of the divorce to more than $3.24 million at the time of the motion for modification. Id., at 5-6, 105 A.3d 118. Thus, in the absence of any other change in circumstances, the modification requested by the plaintiff in Dan could only have increased her standard of living to a level higher than that contemplated by the original alimony **506 award. In contrast, the plaintiff in the present case was merely attempting to reinstate the percentage provision of the original award, thereby preserving its underlying purpose. Accordingly, we conclude the trial court was not required under Dan to presume in the present case that the exclusive purpose of the original alimony award was to allow the plaintiff to continue to enjoy the standard of living that that she enjoyed during the marriage.
The judgment is affirmed.
In this opinion the other justices concurred.

The defendant appealed to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

Hereinafter, all references to the trial court are to Judge Colin unless otherwise indicated.

Indeed, in light of the fact that the trial court expressly noted that the plaintiff's net weekly income at the time of the 2012 modification order was $973, we find it improbable that the court mistakenly believed that the plaintiff's income had increased from the date of the 2012 modification order.

As we have indicated, the trial court found that the defendant's weekly net income had increased from $2163 at the time of the 2012 modification order to $6765 in 2015 and that the plaintiff's net weekly income at the time of the 2012 modification order was $973 and was $763.54 in 2015.

We address the defendant's claim that the trial court in the present case improperly considered certain evidence to determine the purpose of the original alimony award in part III of this opinion.

We have concluded in part I of this opinion that the trial court properly considered the purpose of the original alimony award when it modified the 2012 modification order.

This court observed in Dan that, "[h]istorically, alimony was based [on] the continuing duty of a divorced husband to support an abandoned wife and should be sufficient to provide her with the kind of living [that] she might have enjoyed but for the breach of the marriage contract by the [husband]." (Internal quotation marks omitted.) Dan v. Dan , supra, 315 Conn. at 10, 105 A.3d 118. The defendant in Dan contended that the purpose of the alimony award at issue in that case was to "ensure that [the plaintiff] receive[d] adequate support." (Internal quotation marks omitted.) The plaintiff did not dispute this claim, but claimed only that the original alimony award was no longer sufficient to meet her needs or to allow her to enjoy the standard of living that she enjoyed during the marriage. Id., at 18, 105 A.3d 118. Thus, there was no claim or evidence that the underlying purpose of the original alimony award was to allow the plaintiff to share the defendant's standard of living after the divorce.

As we have indicated, the trial court also included a cap on alimony payments in the modification order that is the subject of this appeal, a cap that was one half of the amount provided for in the original alimony award.

We emphasize, however, that we continue to believe that the trial courts should not, in the absence of good reasons, depart from the general rule that the purpose of alimony is to allow the supported spouse to continue to enjoy the standard of living that existed during the marriage.