******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

KATHERINE B. PEIXOTO *v.* MARK M. PEIXOTO
(AC 40599)

DiPentima, C. J., and Elgo and Pellegrino, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, appealed to this court from the judgment of the trial court granting the plaintiff's motion for a modification of alimony. The defendant claimed that the trial court, in modifying alimony, improperly construed the legal standards set forth by our Supreme Court in *Dan* v. *Dan* (315 Conn. 1), in which the court held that an increase in the supporting spouse's income, standing alone, ordinarily will not justify the granting of a motion to modify an alimony award unless the initial alimony award was insufficient to fulfill the underlying purpose of the award or if other exceptional circumstances exist. *Held* that the trial court did not abuse its discretion in granting the plaintiff's motion to modify alimony: although the purpose of the alimony award ordered by the court was unclear from the record, it was clear that the trial court found that exceptional circumstances existed that warranted a modification of the alimony award, as the dissolution court rendered its judgment with minimum knowledge as to the earnings or debts of the defendant because he did not appear or participate in the dissolution proceedings, or file a financial affidavit, an agreement of the parties was not presented to the dissolution court, which had been presented with inaccurate information regarding the defendant's income, and evidence submitted at the modification hearing demonstrated that the defendant's actual base salary at the time of the dissolution was approximately 20 percent more than previously thought; moreover, although the trial court recognized that the lack of a stipulated agreement in this case was different from the facts presented in *Dan*, where the parties had a stipulated agreement, the court did not hold that the proscription on upward modifications of alimony in *Dan* applied only when the parties entered into a stipulation on alimony at the time of the initial dissolution, as the court found other distinguishing factors that set this case apart from *Dan*, including the defendant's nonappearance in the dissolution case and the lack of any financial information for the defendant, the trial court properly determined that the evidence demonstrated a substantial change in circumstances warranting a modification of alimony, and the defendant's claim that the trial court acted in contravention of the standards set forth in *Dan* was unavailing.

Argued May 24—officially released October 2, 2018

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Hon. Stanley Novack*, judge trial referee; judgment dissolving the marriage and granting certain other relief; thereafter, the court, *Colin, J.*, granted the plaintiff's motion for modification of alimony and child support, and the defendant appealed to this court. *Affirmed.*

*Barbara M. Schellenberg*, with whom, on the brief, was *Rachel A. Pencu*, for the appellant (defendant).

*Katherine B. Peixoto*, the appellee (plaintiff), filed a brief.

*Opinion*

PELLEGRINO, J. The defendant, Mark M. Peixoto, appeals from the judgment of the trial court granting the postjudgment motion for modification of alimony filed by the plaintiff, Katherine B. Peixoto.[1] On appeal, the defendant claims that the court erred in granting the modification of alimony after it "improperly construed the legal standards set forth by the Connecticut Supreme Court in *Dan* v. *Dan*, [315 Conn. 1, 105 A.3d 118 (2014)]." We affirm the judgment of the trial court.

The following procedural history, along with the facts as found by the trial court, *Colin*, *J.*, inform our review. "The marriage of the parties was dissolved on December 2, 2014. At that time, the parties had been married for nearly nine years. They have two minor children (now ages eleven and nine), who reside primarily with the plaintiff-mother in a two-family home in Westport . . . . Although the defendant resided in New Jersey at the time of the dissolution of marriage action, he did not file an appearance in the proceedings; thus, the matter proceeded as an unopposed hearing before the court . . . on December 2, 2014. A financial affidavit for the defendant was not filed at that time. The court entered certain financial orders.

"The defendant was ordered to pay (1) child support in accordance with the child support guidelines in the amount of $320 per week; (2) $240 per week for childcare expenses . . . which represented one half of the childcare expenses at that time; and (3) periodic alimony in the amount of $500 per month until the death of either party, the remarriage of the plaintiff, or December 31, 2019, whichever first occurs.

"The plaintiff now seeks an increase in these financial orders and alleges in her motion that '[a] substantial change of circumstances has arisen since the entry of the orders of the court on December 2, 2014, in that the defendant's income has significantly increased.' She now seeks (1) child support of $471 per week in accordance with the current child support guidelines; (2) 55 [percent] of the cost of childcare expense . . . and (3) $1500 per month in alimony. The plaintiff also seeks to have these increased orders become effective retroactively to the date of filing of her motion."[2]

The court also found: "The current child support guidelines provide for a presumptive child support award of $471 per week from [the defendant to the plaintiff] and a division of unreimbursed medical expenses and childcare contributions as follows: 55 [percent] to be paid by [the defendant] and 45 [percent] to be paid by [the plaintiff]. This is based on the following net weekly incomes: $1350 for [the plaintiff] and $2683 by [the defendant].

"The [defendant's] net weekly income at the time of the divorce in December, 2014, was reported to be

$1669. However, that understated the defendant's actual income. The child support guidelines worksheet submitted to the dissolution court was based on the defendant having a gross annual income of $125,000 per year. The defendant's actual base salary at that time was $150,000 per year. This is the same base annual salary that the defendant now earns from his current employment.

"The defendant's gross annual income in 2016 was $201,465. The dissolution court in 2014 assumed a gross annual income of $125,000. Thus, the plaintiff has demonstrated by a preponderance of the evidence that the defendant's income has substantially increased since the date of the dissolution of marriage in 2014. As a result, a modification of the current orders is appropriate.

"The parties' two minor children reside with [the plaintiff] in Westport . . . . The defendant is entitled to parenting time with them on alternating weekends as per the parenting plan . . . . The plaintiff's employment earnings have increased since the date of the divorce from a gross annual income of $60,000 to a gross annual income of $66,000. Since the date of dissolution, she has purchased a two-family home and now receives rental income from two separate tenants. Her gross yearly income in 2016 as shown on her financial affidavit was $75,000."

Additionally, the court found: "The defendant has a greater income and earning capacity than the plaintiff . . . . Moreover, the dissolution court was not provided with a true and accurate picture of the defendant's actual income at that time. The defendant's failure to appear and participate in the dissolution action deprived the dissolution court of the type of information customarily utilized by the court at the time of a final hearing. . . . Finally, the court has also considered the assets and debts of the parties. The plaintiff has assets with a total value of $149,577 and debts of $64,489, and the defendant has total assets of $328,742 and debts of $41,030."

The court also considered whether the present case presented exceptional circumstances that warranted a modification. The court found that such exceptional circumstances existed, namely: "(1) the defendant failed to appear or participate in the dissolution proceeding; (2) the defendant failed to appear at the final hearing; (3) the defendant failed to file a financial affidavit at or before the time of the final dissolution hearing; (4) an agreement of the parties was not presented to the dissolution court; [and] (5) the dissolution court was presented with inaccurate information regarding the defendant's income . . . ."

On the basis of these explicit findings, the court granted the plaintiff's motion to modify alimony and

child support. As to alimony, the court ordered: "Starting June 15, 2017, the defendant shall pay additional alimony to the plaintiff in an amount equal to [15 percent] of the gross amount of his bonus income from employment within [thirty] days of his receipt of a bonus. The payment shall be accompanied by reasonable documentation necessary for the plaintiff to verify that she has received the correct amount. The defendant is eligible for $60,000 in bonus compensation from his current employer each year, which is paid in two installments (July and December). Assuming the defendant remains employed with his present employer at the same level of compensation for the next three years, and earns his maximum annual bonus of $60,000 per year, then the plaintiff will receive [15 percent] of $180,000 or $27,000, and the defendant will receive $153,000. These payments shall be taxable to the plaintiff and deductible by the defendant. This division of the defendant's bonus income, if, as and when he earns it, is fair and equitable under the circumstances of this case after consideration of all of the factors set forth in [General Statutes § 46b-82]."[3] This appeal followed.

On appeal, the defendant claims that the court "improperly construed the legal standards set forth by our Connecticut Supreme Court in *Dan* v. *Dan*, [supra, 315 Conn. 1]" and that this misconstruction caused the court to err by granting the plaintiff's motion for modification of alimony. The defendant argues in the first paragraph of his appellate brief: "The trial court's decision to modify alimony is in conflict with *Dan* . . . [a case] which . . . [holds] that courts rarely have discretion to grant an upward modification of alimony when the only change in circumstance, postjudgment, is the payor's increase in income. The absence of a written agreement between the parties was not a factor that materially distinguished the instant case from *Dan*. Neither was there any exceptional circumstance that allowed the trial court to exercise its discretion by modifying the original alimony award. Accordingly, the trial court's judgment should be reversed." We are not persuaded by these arguments.

"The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . [T]he foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Notwithstanding the great deference accorded the trial court in dissolution proceedings, a trial court's ruling . . . may be reversed if, in the exercise of its discretion, the trial court applies the wrong standard of law." (Internal quo-

tation marks omitted.) *McKeon* v. *Lennon*, 321 Conn. 323, 341–42, 138 A.3d 323 (2016).

In support of his claim, the defendant relies on our Supreme Court's holding in *Dan*, which provides that "an increase in the supporting spouse's income, standing alone, ordinarily will not justify the granting of a motion to modify an alimony award." *Dan* v. *Dan*, supra, 315 Conn. 10. The defendant states that he does recognize, however, that also pursuant to *Dan*, the trial court retains discretion to modify an alimony award upon a showing of a change in the payor's income if exceptional circumstances exist. See id., 17.

The defendant contends, nevertheless, that in this instance the trial court: (1) "erroneously determined that *Dan*'s proscription on upward modification of alimony applies *only* when the parties entered into a stipulation on alimony at the time of the initial dissolution"; (emphasis added); (2) "failed to appreciate that the circumstances of the case at bar present just the type of situation that is fully consistent with the policy expressed by the [court in *Dan*] . . . [and] the fact that [the] defendant did not participate in the dissolution proceedings, appear at the dissolution hearing, or that the parties did not present a written agreement to the court in December, 2014, should have had no bearing on Judge Colin's decision"; (citations omitted); and (3) "because it is clear that [the] plaintiff's financial needs were met at the time of the dissolution and continue to be met . . . the inaccurate information regarding [the] defendant's income [at the time of the dissolution judgment] should not have qualified as an 'exceptional circumstance' so as to negate the application of *Dan*'s general rule." We are not persuaded.

First, we disagree with the defendant's contention that the court "erroneously determined that *Dan*'s proscription on upward modification of alimony applies *only* when the parties entered into a stipulation on alimony at the time of the initial dissolution." (Emphasis added.) We do not read the court's decision so narrowly. Rather, it is quite clear that although the court recognized that the lack of a stipulated agreement in this case was different from the facts presented in the *Dan* case, where the parties had a stipulated agreement, that single factor was not the only distinguishing factor found by the court. Indeed, the court also found that the defendant's nonappearance in his dissolution case, and the lack of any financial information or a financial affidavit from the defendant were further distinguishing factors. The defendant's failure to appear and to submit *any* financial information to the dissolution court left that court and the plaintiff ill-informed as to the defendant's actual income and expenses. The dissolution court itself specifically stated that it was entering its award "with minimum knowledge on the part of the court as far as what the defendant earns and owes

. . . ." Accordingly, we agree with the trial court that these factors distinguish this case from the facts presented in *Dan*.

Second, we disagree with the defendant's contention that the court "failed to appreciate that the circumstances of the case at bar present just the type of situation that is fully consistent with the policy expressed by the [court in *Dan*] . . . [and] the fact that [the] defendant did not participate in the dissolution proceedings, appear at the dissolution hearing, or that the parties did not present a written agreement to the court in December, 2014, should have had no bearing on Judge Colin's decision." (Citations omitted.) As explained in the previous paragraph, Judge Colin found it relevant that the dissolution court rendered its judgment, including alimony orders, with "minimum knowledge" as to the earnings or debts of the defendant because the defendant did not appear or participate in the dissolution proceedings. We agree with Judge Colin that this fact and the fact that evidence was presented at the modification hearing that demonstrated that the defendant had substantially more earnings, nearly 20 percent more, at the time of the dissolution than was known were important considerations in addressing the merits of the motion to modify alimony. These were also distinguishing factors from the facts present in *Dan*.

Third, we disagree with the defendant's contention that the court did not consider the policy expressed in *Dan* "because it is clear that [the] plaintiff's financial needs were met at the time of the dissolution and continue to be met . . . ." At the time the dissolution court rendered judgment and entered its alimony orders, however, it did not state whether the alimony award was to allow the plaintiff to continue to share in the defendant's standard of living after the divorce or whether it was to provide the plaintiff with the same standard of living that she had enjoyed during the marriage. We agree with the defendant that in *Dan*, our Supreme Court held that an increase in income, standing alone, does not justify a modification of an alimony award unless the initial alimony award was insufficient to fulfill the underlying purpose of the award; *Dan* v. *Dan*, supra, 315 Conn. 15–16; or if other exceptional circumstances exist. Id., 17.

More recently, however, in *Cohen* v. *Cohen*, 327 Conn. 485, 500–501, 176 A.3d 92 (2018), our Supreme Court also explained: "[T]his court held in *Dan* that the trial court should consider the purpose of the original alimony award when determining whether an increase in the supporting spouse's income, standing alone, justifies a modification. See *Dan* v. *Dan*, supra, 315 Conn. 11–15. In the present case, the original alimony award in the separation agreement unambiguously provided that the defendant would pay the plaintiff a percentage of his income, up to a maximum of $250,000 annually.

The agreement did not indicate, however, whether the purpose of the award was to allow the plaintiff to continue to share in the defendant's standard of living after the divorce or, instead, to provide her with the same standard of living that she had enjoyed during the marriage. If the defendant's income prior to the divorce had been steady over a long period of time and the parties anticipated that he would have a similar income for the foreseeable future, it would be reasonable to conclude that the purpose of the original alimony award was simply to maintain the plaintiff's standard of living. On the other hand, if the defendant's income had fluctuated widely from year to year before the divorce, it would be reasonable to conclude that the purpose of the award was to allow the plaintiff to continue to share in the defendant's income after the divorce, in both bad times and good times. Because the separation agreement itself was silent on this point, we conclude that the trial court properly considered extrinsic evidence . . . . " *Cohen* v. *Cohen*, supra, 500–501.

In the present case, the dissolution court gave no indication as to the purpose of the alimony award to the plaintiff. We know that the award was based on the assumed gross income of the defendant, who had been nonappearing, of $125,000, with no information as to the defendant's net income. The plaintiff's financial affidavit demonstrated that, at the time of the dissolution, her gross wages were $60,008, and her mandatory deductions were $11,440. She listed her expenses as $73,424. In accordance with her request, the dissolution court awarded alimony in the amount of $6000 per year.

Evidence submitted at the modification hearing demonstrates that the defendant's actual base salary at the time of the dissolution was $150,000, approximately 20 percent more than previously thought. His gross income in 2016 was $201,465, which consisted of a base salary of $150,000 plus bonus income, and he listed mandatory deductions in the amount of $70,876. The defendant also listed his expenses as $109,876, which included alimony and child support expenses. The court found that the plaintiff's gross income in 2016 was $66,000 from salary and $9,000 from rental income. Her financial affidavit also reveals approximately $10,000 in bonus income. She lists her mandatory deductions as $14,560, and her expenses as $105,872. The court found that all of these facts demonstrated a substantial change in circumstances. We agree with that conclusion.

In *Dan*, our Supreme Court held that it was permissible for a court to order an upward modification of alimony on the basis of an increase in the payor's income if either: (1) the initial alimony award was insufficient to fulfill the underlying purpose of alimony; or (2) the court finds that other exceptional circumstances exist. *Dan* v. *Dan*, supra, 315 Conn. 15–17. Although the purpose of the alimony award ordered by the disso-

lution court may be unclear from the record, what is clear is that Judge Colin, after an evidentiary hearing, a review of the dissolution transcript and decision, and in full consideration of *Dan*, found that exceptional circumstances exist in this case that warrant a modification of the alimony award. We find no abuse of discretion in that conclusion. On the basis of the foregoing, we conclude that the defendant's claim that the trial court acted in contravention of the standard and the holding established by our Supreme Court in *Dan*, thus, is unavailing.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The court also modified the defendant's child support obligation. The defendant, however, does not claim any error with respect to that portion of the judgment.

[2] General Statutes § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support . . . may, at any time thereafter, be continued, set aside, altered or modified by the court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a, unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate. . . . No order for periodic payment of permanent alimony or support may be subject to retroactive modification, except that the court may order modification with respect to any period during which there is a pending motion for modification of an alimony or support order from the date of service of notice of such pending motion upon the opposing party pursuant to section 52-50. If a court, after hearing, finds that a substantial change in circumstances of either party has occurred, the court shall determine what modification of alimony, if any, is appropriate, considering the criteria set forth in section 46b-82."

[3] General Statutes § 46b-82 (a) provides in relevant part: "In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall consider the evidence presented by each party and shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability and feasibility of such parent's securing employment."