******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# TRACY SIMMS v. AUGUSTO ZUCCO
## (AC 44407)

Prescott, Clark and DiPentima, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, appealed to this court from the judgment of the trial court opening the judgment of dissolution and modifying his alimony obligation. The defendant, who resided in Pennsylvania at the time the plaintiff filed her motion to modify alimony, claimed that the court improperly determined that the plaintiff's service of the notice of the motion to modify, which consisted of a certified mailing by a state marshal to his residence in Pennsylvania, was legally sufficient. He further claimed that the trial court erred in opening the judgment of dissolution following the automatic stay imposed by the defendant's petition for chapter 13 bankruptcy pursuant to federal law (11 U.S.C. § 362) and in ordering retroactive alimony resulting in a substantial arrearage. *Held*:

1. The trial court properly concluded that the plaintiff's service on the defendant of the notice of her motion to modify was legally sufficient: the trial court granted the plaintiff's motion for order of notice permitting her to serve the defendant with notice of her motion to modify by certified mail, the plaintiff served the defendant with a copy of the motion to modify through a state marshal pursuant to statutory requirements (§§ 52-50 and 52-52), as the state marshal made service on the defendant by certified mail, the receipt for which was signed by the defendant's stepdaughter, who resided with the defendant, and this court declined to hold that certified mail service by a state marshal was legally insufficient to comply with §§ 52-50 and 52-52; moreover, the signature by the defendant's stepdaughter at his residence was sufficient to confer actual notice on the defendant, the defendant's counsel conceded at oral argument that the defendant did not dispute that he received actual notice of the plaintiff's service, and none of the defendant's filings in the trial court contested the manner of the plaintiff's notice of service.

2. The trial court did not violate the automatic bankruptcy stay imposed by 11 U.S.C. § 362 in modifying the defendant's alimony obligation and opening the judgment of dissolution; the Bankruptcy Court's written order clearly expressed its intention to terminate the automatic stay with respect to the plaintiff's request that the trial court modify the defendant's alimony payments, and that order, which expressly permitted the plaintiff to take "all actions necessary" to modify the defendant's alimony obligation, did not prohibit the opening of the judgment of dissolution or prohibit the plaintiff from seeking, and the trial court from ordering, the payment of retroactive alimony.

3. The trial court did not abuse its discretion by increasing the defendant's alimony obligation and ordering retroactive alimony to the date on which the plaintiff filed her motion for modification: the court, having opened the judgment of dissolution, was no longer restricted by the limitations in the parties' separation agreement incorporated therein, and, on the basis of the plaintiff's testimony at the hearing on her motion to modify, the court found that the defendant intentionally had concealed substantial assets at the time of the judgment of dissolution and that the plaintiff's income and assets had decreased significantly from the date of that judgment; moreover, although the defendant failed to provide updated financial records, his bankruptcy filing established a substantial increase in his earnings and earning capacity; furthermore, the defendant, despite every opportunity to present any defense to the plaintiff's motion to modify, failed to do so.

Argued March 8—officially released August 23, 2022

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Danbury, where the court, *Winslow, J.*, rendered

judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Shaban, J.*, granted the plaintiff's motion for order of notice to serve the defendant by certified mail with a motion to modify alimony; subsequently, the court, *Truglia, J.*, granted the plaintiff's motions to open the judgment and to modify alimony and rendered judgment modifying the judgment of dissolution and ordering the defendant to pay increased alimony to the plaintiff, from which the defendant appealed to this court. *Affirmed.*

*David V. DeRosa*, for the appellant (defendant).

*Tracy Simms*, self-represented, the appellee (plaintiff).

*Opinion*

PRESCOTT, J. The defendant, Augusto Zucco, appeals from the judgment of the trial court opening the judgment of dissolution and modifying his alimony obligation to the self-represented plaintiff, Tracy Simms. On appeal, the defendant claims that the court improperly (1) determined that the plaintiff's service of the notice of her motion to modify alimony was legally sufficient, (2) opened the judgment of dissolution and modified the defendant's alimony obligation in violation of the automatic bankruptcy stay imposed by 11 U.S.C. § 362 as a result of the defendant's chapter 13 bankruptcy petition, and (3) increased his alimony obligation and ordered retroactive alimony resulting in a substantial arrearage.[1] We disagree and, accordingly, affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history.[2] On January 15, 2014, the court dissolved the marriage of the parties. The court incorporated into the judgment of dissolution the parties' separation agreement (agreement), which was executed on the same date. Article 2 of the agreement sets forth the parties' respective rights and obligations regarding alimony. Article 2.1 of the agreement provides in relevant part that the defendant shall pay to the plaintiff $1 of alimony per year for a period of five and one-half years from the date of dissolution, that his alimony obligation "shall be completely non-modifiable as to term by way of extension," and that "assets and income from assets that are being divided pursuant to the parties' separation agreement and divorce decree, shall not be considered by a court in any future modification proceedings. Only earned income from employment shall be considered in any future modification proceedings including, but not limited to, W-2, 1099, K-1 or Schedule C income."

On November 13, 2015, the plaintiff filed a postjudgment motion to modify alimony in which she sought to increase the amount of the defendant's alimony obligation. In support of her motion to modify, the plaintiff asserted that there had been a substantial change in circumstances since the judgment of dissolution, "including an increase in the defendant's income and assets and a decrease in the plaintiff's financial circumstances." The plaintiff filed, and the court granted, a motion for order of notice permitting her to serve the defendant with notice of her motion to modify by certified mail. The plaintiff then retained a Connecticut state marshal who, on December 1, 2015, sent, by certified mail return receipt requested, notice of the motion to modify to the defendant at his residence in Gettysburg, Pennsylvania. On December 7, 2015, the notice was received at the defendant's residence and signed for by his stepdaughter, Alicia Styer. The defendant does not dispute that he received the documents served by the

plaintiff.

On March 21, 2016, the plaintiff filed a motion to open the judgment of dissolution on the ground that it was obtained through the defendant's fraud. Therein, the plaintiff asserted that the defendant, by and through his various business entities, had concealed substantial property, assets, and income around the time of the judgment of dissolution. The plaintiff specifically contended that the defendant's financial affidavit submitted prior to the judgment of dissolution underrepresented his income and assets by more than $400,000 and that he failed to disclose that he had purchased property in Gettysburg, Pennsylvania.[3]

On February 6, 2019, the defendant and his current wife, Hillary Styer, filed a voluntary chapter 13 petition for bankruptcy in the United States Bankruptcy Court for the Middle District of Pennsylvania. On May 30, 2019, the plaintiff filed in the Bankruptcy Court a motion for relief from the automatic bankruptcy stay imposed by 11 U.S.C. § 362, "so as to allow continued divorce proceedings . . . and other economic issues to proceed in the Connecticut" dissolution action. On July 2, 2019, the Bankruptcy Court issued a written order granting the plaintiff's motion for relief and terminating the automatic bankruptcy stay to permit the plaintiff to "take all actions necessary to commence or continue an action to establish or modify an order for a domestic support obligation."

On December 5, 2019, the court held an evidentiary hearing on the plaintiff's motion to modify alimony, at which only the plaintiff and her counsel appeared.[4] At the hearing, the plaintiff introduced as full exhibits her December 5, 2019 financial affidavit and the defendant's April 17, 2019 schedule of assets, liabilities, and creditors filed in his bankruptcy proceeding. The plaintiff testified regarding the defendant's concealed assets and the increase in his income since the judgment of dissolution.

On January 3, 2020, the court issued an order initially denying the plaintiff's motion to modify alimony. The court reasoned that it was unable to modify the defendant's alimony obligation as requested for two reasons. First, the court held that the motion to modify was not served on the defendant in compliance with General Statutes §§ 46b-86 (a) and 52-50 (a).[5] Second, the court stated that the term of the defendant's alimony obligation had expired because, pursuant to the agreement, his alimony obligation was restricted to "five and one-half years" from the judgment of dissolution. Consequently, the court denied the plaintiff's motion to modify alimony "without prejudice to the plaintiff's right to demonstrate that the motion was served upon the defendant pursuant to § 52-50."

On January 14, 2020, the plaintiff filed a motion to

reconsider the court's decision denying her motion to modify alimony. Therein, the plaintiff asserted that her motion to modify alimony "was properly served upon the defendant by a marshal pursuant to statute and pursuant to [the] order of notice" issued by the court. The plaintiff also asserted that her pending motion to open the judgment "provides a means for the court to establish a new alimony order based upon the defendant's repeated fraud upon the court, both prior to and following the entry of [the] judgment [of dissolution]." The plaintiff attached to her motion to reconsider documents evincing the certified mail service of the notice of her motion to modify alimony to the defendant's residence. On February 10, 2020, the court held a hearing on the plaintiff's motion to reconsider at which counsel for both parties attended.

On July 9, 2020, the court issued a memorandum of decision in which it granted the plaintiff's motion to reconsider, the plaintiff's motion to modify alimony, and the plaintiff's motion to open. First, the court granted the plaintiff's motion to reconsider and held that the plaintiff's service of the notice of her motion to modify alimony was proper because she had "served the defendant with a copy of the motion to modify through a state marshal pursuant to the court's order of notice in accordance with General Statutes §§ 52-50 and 52-52. The service upon the defendant was sufficient to enable this court to consider making the plaintiff's motion for modification retroactive to the date of service, December 1, 2015."

Second, the court granted the plaintiff's motion to modify alimony, holding that the plaintiff had met her burden to establish a substantial change in circumstances. The court found that, during the relevant time period, the defendant's assets and income significantly had increased and the plaintiff's assets significantly had decreased. Accordingly, the court ordered the defendant "to pay the plaintiff $2000 per month in alimony on the first day of each month until further order of [the] court," that "the alimony award is made retroactive from December 1, 2015 through July 1, 2020," and that "the total amount due [was] therefore $110,000 . . . ."

Third, the court granted the plaintiff's motion to open the judgment of dissolution. The court found that the plaintiff proved, by clear and convincing evidence, that the defendant intentionally had concealed significant assets from the court at the time of the judgment of dissolution. The court reasoned that it had "the authority to open the judgment solely as to the alimony order and modify the term of alimony as well as the amount paid" because the Bankruptcy Court's July 2, 2019 order terminating the stay "authorize[d] the plaintiff to take 'all action necessary to commence or continue an action to establish or modify an order for a domestic support

obligation.' " The court modified the judgment of dissolution by deleting from article 2 of the incorporated agreement the five and one-half year limitation and the restriction that future modification of alimony be based solely on the defendant's employment income, and held that "[t]he remainder of the terms of article 2 of the agreement were to remain in full force and effect." On July 29, 2020, the defendant filed a motion to reargue the court's July 7, 2020 decision, which the court denied. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the court incorrectly determined that the plaintiff's service of the notice of her motion to modify alimony was legally sufficient. The defendant specifically argues that the plaintiff's service was improper because neither § 52-50 nor § 52-52 expressly permits a state marshal to serve notice of a postjudgment motion to modify alimony on a nonresident party by certified mail. The defendant further argues that, even if service by certified mail was legally sufficient, there was no evidence that the defendant was served. Accordingly, the defendant contends that, because the plaintiff's service of her notice was improper, she was not entitled to retroactive alimony, pursuant to § 46b-86, spanning back to the service of the notice of her motion to modify alimony in December, 2015. We disagree.

The following additional facts and procedural history are relevant to our resolution of the defendant's first claim. On November 13, 2015, the plaintiff filed a postjudgment motion to modify alimony in which she sought to increase the amount of the defendant's alimony obligation. In her motion to modify, the plaintiff alleged that, "since the entry of the [judgment of dissolution], there has been a substantial change in the circumstances of the parties, including an increase in the defendant's income and assets and a decrease in the plaintiff's financial circumstances." The court scheduled a hearing on the plaintiff's motion to modify alimony for December 21, 2015, and ordered that the plaintiff provide notice of the motion to modify and of the corresponding hearing to the defendant "as prescribed by law."

Also on November 13, 2015, the plaintiff filed a motion for order of notice by way of a standard form, JD-FM-167 (Rev. 2-11). In this motion, the plaintiff sought the court's permission to serve the defendant—who was residing in Gettysburg, Pennsylvania—with notice of her motion to modify alimony "by registered or certified mail (to be done by a state marshal or other proper officer) or by an authorized person in the state where the party to be notified lives, or to make such other order of notice as the court deems reasonable." On November 23, 2015, the court granted the plaintiff's

motion for order of notice and permitted the plaintiff to serve the defendant with notice "by registered or certified mail, personal return receipt requested . . . ." The plaintiff then directed a state marshal to provide this notice to the defendant.

The state marshal's returns of service[6] provide that he "made service" on the nonresident defendant. Particularly, those returns of service provide that, on December 1, 2015, the state marshal sent, by certified mail return receipt requested, to the defendant at his address in Gettysburg, Pennsylvania, a true and attested copy of the court's order of notice, the plaintiff's motion for order of notice, the plaintiff's motion to modify alimony, the order for a hearing, and the summons for the hearing. The state marshal's returns of service further state that, on December 12, 2015, he "received the RETURN RECEIPT(S) undelivered [l]etter addressed to the . . . defendant . . . ."[7] The certified mail return receipt attached to the returns show that the service addressed to the defendant was signed on December 7, 2015, by the defendant's stepdaughter, Alicia Styer, who was residing at the defendant's residence at that time.

The court, in its July 9, 2020 memorandum of decision, granted the plaintiff's motion to reconsider and held that the plaintiff's service of the notice of her motion to modify alimony was proper because she had "served the defendant with a copy of the motion to modify through a state marshal pursuant to the court's order of notice in accordance with . . . §§ 52-50 and 52-52. The service upon the defendant was sufficient to enable [the] court to consider making the [modification of the defendant's alimony obligation] retroactive to the date of service, December 1, 2015." The court further held that "counsel appeared for the defendant in this case on December 17, 2015, and filed numerous pleadings in opposition to the plaintiff's motion to modify alimony."

We next set forth the standard of review and legal principles relevant to our resolution of this claim. Whether the plaintiff's service of the notice of her motion to modify and the court's order of notice was legally sufficient pursuant to §§ 52-50 and 52-52 raises an issue of statutory interpretation over which we exercise plenary review.[8] See, e.g., *Lopez* v. *William Raveis Real Estate, Inc.*, 343 Conn. 31, 42, 272 A.3d 150 (2022) (exercising plenary review over question of statutory construction). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its

relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Day* v. *Seblatnigg*, 341 Conn. 815, 826, 268 A.3d 595 (2022).

Before turning to §§ 52-50 and 52-52, we emphasize that there is no dispute on appeal that the plaintiff must comply with the requirements of § 46b-86 to be entitled to an award of retroactive alimony. Section 46b-86 (a), which governs postjudgment motions to modify alimony, provides in relevant part: "No order for periodic payment of permanent alimony or support may be subject to retroactive modification, except that the court may order modification with respect to any period during which there is a pending motion for modification of an alimony or support order from the date of service of notice of such pending motion upon the opposing party pursuant to section 52-50. . . ." See *Cannon* v. *Cannon*, 109 Conn. App. 844, 849–50, 953 A.2d 694 (2008) (holding that § 46b-86 authorizes retroactive modification of alimony beginning on date notice of motion to modify was served).[9]

Section 52-50 (a), which authorizes certain individuals to serve process, provides in relevant part: "All process shall be directed to a state marshal, a constable or other proper officer authorized by statute, or . . . to an indifferent person. A direction on the process 'to any proper officer' shall be sufficient to direct the process to a state marshal, constable or other proper officer." There is no mandate within § 52-50 prescribing the method by which a proper officer is to effectuate service on the opposing party.

We next set forth the relevant language of § 52-52, which was cited by the court in its decision and on which the defendant substantially relies on appeal. See footnote 10 of this opinion. Section 52-52 (a), which governs the provision of judicial orders of notice, provides: "Orders of notice of legal or judicial proceedings need not be directed to or attested by any officer or person, as is required of process under section 52-50, but all copies of complaints or other papers thereby ordered, served or mailed shall be so attested as true copies of the original. Such order shall not require publication of any recital stating where the designated newspaper is printed or recital of any other details in or pertinent to the application for the order which are not essential parts of the notice to be given."

Accordingly, in order to be entitled to an award of retroactive alimony pursuant to § 46b-86 (a), a party must comply with the service requirements of § 52-50 by ensuring that a proper officer, such as a state marshal, serves notice of the motion to modify on the opposing party. See *Shedrick* v. *Shedrick*, 32 Conn. App. 147, 148,

151, 627 A.2d 1387 (1993) (holding that service of motion to modify that contained certification that "a copy was mailed to all counsel and pro se parties of record" did not strictly comply with § 52-50 because such mail service was not made "by a sheriff, a deputy sheriff, a constable or other proper statutorily authorized officer"). On the other hand, to comply with § 52-52, a party need not use the services of a proper officer, and can either serve, mail, or publish true copies of the order of notice to the opposing party.[10]

In the present case, the plaintiff complied with the requirements of both §§ 52-50 and 52-52. The plaintiff filed, and the court granted, a motion for order of notice in which the plaintiff specifically sought to serve the defendant—who was residing in Gettysburg, Pennsylvania—with notice of her motion to modify alimony "by registered or certified mail (to be done by a state marshal or other proper officer) or by an authorized person in the state where the party to be notified lives, or to make such other order of notice as the court deems reasonable." In accordance with this order of notice, the plaintiff retained a state marshal, who "made service" of the notice of her motion to modify as well as the court's order of notice on the nonresident defendant by certified mail to his address in Gettysburg, Pennsylvania. The certified mail receipt was signed by the defendant's stepdaughter, who was residing at the defendant's residence at that time. Consequently, the plaintiff complied with § 52-50 because she retained a state marshal who served notice of her motion to modify on the defendant. The plaintiff complied with § 52-52 because the state marshal served by certified mail a true copy of the court's order of notice on the defendant.

The defendant contends that certified mail service was legally insufficient because neither § 52-50 nor § 52-52 contains a provision expressly permitting a state marshal to serve notice only by certified mail.[11] The defendant's argument, however, has no basis in the plain language of §§ 52-50 and 52-52 because neither statute expressly prescribes the method by which such service must be accomplished. If the legislature intended to limit, or specifically delineate, the proper method of service within §§ 52-50 and 52-52, it could have done so. We decline the defendant's invitation to graft an exception into both §§ 52-50 and 52-52 that service on a nonresident party cannot be accomplished by certified mail. See *Rainbow Housing Corp.* v. *Cromwell*, 340 Conn. 501, 520, 264 A.3d 532 (2021) ("[W]e are not in the business of writing statutes; that is the province of the legislature. Our role is to interpret statutes as they are written. . . . [We] cannot, by [judicial] construction, read into statutes provisions [that] are not clearly stated. . . . [W]e are not permitted to supply statutory language that the legislature may have chosen to omit . . . ." (Citations omitted; internal quotation marks omitted.)). The defendant fails to cite a

single case in support of this argument and, thus, we decline to hold for the first time that certified mail service by a state marshal is legally insufficient to comply with §§ 52-50 and 52-52.

The defendant alternatively contends that, even if certified mail service was legally sufficient, "there was no evidence that [he] was ever served at all" because the service package was signed for by his stepdaughter at his residence. We reject the defendant's argument on both legal and factual grounds. Legally, the purpose of service of a notice of a motion to modify is to ensure that a party has notice of their potential liability. See *Shedrick* v. *Shedrick*, supra, 32 Conn. App. 151–52; see also *Johnson* v. *Preleski*, 335 Conn. 138, 149, 229 A.3d 97 (2020) (generally noting that proper service "promotes the public policy of ensuring actual notice to [opposing party]" (internal quotation marks omitted)). The signature by the defendant's stepdaughter at his residence was sufficient to confer actual notice on the defendant, and the defendant has presented no evidence or legal authority to the contrary. Indeed, the defendant's position is contrary to our Supreme Court's decision in *Reiner, Reiner & Bendett, P.C.*, which affirmed the trial court's finding that actual notice was sufficiently conferred on a party when certified mail was sent to a proper address and signed for by a different individual at that address because " '[a] letter properly addressed, stamped and mailed is presumed to have been duly delivered to the addressee' " and "an individual ordinarily would not sign a return receipt for an envelope if the individual had no connection to the addressee." *Reiner, Reiner & Bendett, P.C.* v. *Cadle Co.*, 278 Conn. 92, 111–12, 897 A.2d 58 (2006).

Factually, the plaintiff's filing of her motion to modify, and the court's adjudication of it, came as no surprise to the defendant. In direct conflict with his argument in his written briefs, the defendant's counsel stated at oral argument before this court that he does not dispute that the defendant received actual notice of the plaintiff's service, which included the motion to modify as well as the court's order of notice. In fact, on December 18, 2015, eleven days after the service of the plaintiff's motion to modify, the defendant filed a motion for extension of time seeking to postpone the December 21, 2015 hearing on the plaintiff's motion to modify. On January 19, 2016, the defendant filed an objection to the plaintiff's motion to modify. Neither of these filings contested the manner in which the plaintiff served the notice of her motion to modify on the defendant. The defendant did not attend the December 5, 2019 hearing on the plaintiff's motion to modify and, instead, he claimed in an e-mail sent to the caseflow coordinator that he would not be in attendance because his wife was ill. Additionally, the court held twenty-five status conferences during the four years that the plaintiff's motion to modify was pending, and the defendant

entered into a stipulation and attempted to resolve the plaintiff's motion to modify.[12] On the basis of these circumstances, we are unpersuaded by the defendant's factual assertion that he never was served the notice of the plaintiff's motion to modify. In sum, we reject the defendant's claim as legally and factually unsupported, and we agree with the court's conclusion that the plaintiff properly served on the defendant notice of her motion to modify.

II

The defendant next claims that the court's opening of the judgment of dissolution and modification of the defendant's alimony obligation violated the automatic bankruptcy stay imposed by 11 U.S.C. § 362 as a result of the defendant's chapter 13 bankruptcy petition. In support, the defendant argues that the court lacked the authority to open the judgment of dissolution on the basis of a theory of fraud, to establish an alimony arrearage of $110,000, and to modify the terms of article 2 of the agreement because the automatic stay was terminated only as to "the establishment, modification, and enforcement of a domestic support obligation and nothing else." We disagree.

The following additional facts and procedural history are relevant to our resolution of the defendant's second claim. On February 6, 2019, the defendant filed a voluntary chapter 13 petition for bankruptcy in the United States Bankruptcy Court for the Middle District of Pennsylvania. On May 30, 2019, the plaintiff filed in the Bankruptcy Court a motion for relief from the automatic bankruptcy stay imposed by 11 U.S.C. § 362, "so as to allow continued divorce proceedings . . . and other economic issues to proceed in the Connecticut jurisdiction where the action is still pending." The defendant filed an answer to the plaintiff's motion for relief, and the motion was heard by the Bankruptcy Court on June 25, 2019.

On July 2, 2019, the Bankruptcy Court issued a written order in which it granted the plaintiff's motion for relief and terminated the automatic bankruptcy stay only as to the defendant's alimony obligation. The Bankruptcy Court's order for relief from the automatic stay provides in relevant part: "ORDERED AND DECREED that pursuant to 11 U.S.C. [§] 362 (b) (2) (A) (ii) [the plaintiff] is hereby authorized to take all actions necessary to commence or continue an action to establish or modify an order for a domestic support obligation.

"FURTHER ORDERED that the automatic stay of 11 U.S.C. [§] 362 (a) is hereby terminated to permit [the plaintiff] to take all action necessary to enforce any said order for a domestic support obligation;

"FURTHER ORDERED that the automatic stay of 11 U.S.C. [§] 362 (a) is not terminated as to any issues in any way related to the divorce action referenced above

other than an action to establish, modify or enforce an order for a domestic support obligation . . . ." [13]

In its July 9, 2020 memorandum of decision, the court reasoned that it "has the authority to open the judgment solely as to the alimony order and modify the term of the alimony as well as the amount paid" because "the order of the Bankruptcy Court dated July 2, 2019, authorize[d] the plaintiff to take 'all action necessary to commence or continue an action to establish or modify an order for a domestic support obligation.' " The court accordingly ordered that the defendant pay to the plaintiff $2000 per month in alimony retroactive to the date of the filing of the motion to modify and modified the terms of article 2 of the agreement as to the defendant's alimony obligation.

We next set forth the standard of review and legal principles relevant to our resolution of this claim. The interpretation of an order of a Bankruptcy Court terminating an automatic stay is a question of law over which we exercise plenary review. See *Astoria Federal Mortgage Corp.* v. *Genesis Holdings, LLC*, 159 Conn. App. 102, 114, 122 A.3d 694 (2015). "As a general rule, judgments are construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The judgment should admit of a consistent construction as a whole. . . . To determine the meaning of a judgment, we must ascertain the intent of the court from the language used and, if necessary, the surrounding circumstances." (Internal quotation marks omitted.) *U.S. Bank Trust, N.A.* v. *Giblen*, 190 Conn. App. 221, 227, 209 A.3d 1266, cert. denied, 333 Conn. 903, 215 A.3d 159 (2019).

Pursuant to 11 U.S.C. § 362, "the filing of a bankruptcy petition creates an automatic stay of execution against the commencement or continuation of all actions against the debtor that were, or could have been, filed against the debtor prior to the bankruptcy filing." *Webster Bank* v. *Zak*, 259 Conn. 766, 769 n.3, 792 A.2d 66 (2002). Although a bankruptcy stay imposed by § 362 is "extremely broad in scope," the "Bankruptcy Court . . . is authorized to grant a creditor relief from the stay for cause by terminating, annulling, modifying, or conditioning the stay. . . . The terms of an order modifying an automatic stay must be strictly construed because a stay under § 362 [of the Bankruptcy Code] freezes in place all proceedings against the debtor and his property." (Internal quotation marks omitted.) *Astoria Federal Mortgage Corp.* v. *Genesis Holdings, LLC*, supra, 159 Conn. App. 113; see also *U.S. Bank National Assn.* v. *Crawford*, 333 Conn. 731, 756, 219 A.3d 744 (2019) (explaining that "state courts have jurisdiction to interpret the provisions of the bankruptcy code and orders of the [B]ankruptcy [C]ourt to determine whether, under their plain terms, the automatic stay provision applies

to a state court proceeding"); *Krondes* v. *O'Boy*, 69 Conn. App. 802, 810, 796 A.2d 625 (2002) ("[a]ny 'actions taken in violation of [an automatic bankruptcy] stay are void and without effect' ").

In the present case, the court's modification of the defendant's alimony obligation did not violate the automatic bankruptcy stay. The Bankruptcy Court's July 2, 2019 order unambiguously terminated the automatic bankruptcy stay to permit the plaintiff "to take all actions necessary to commence or continue an action to establish or modify an order for a domestic support obligation," and "to take all action necessary to enforce any said order for a domestic support obligation . . . ." This order clearly expresses the Bankruptcy Court's intention to terminate the automatic stay to permit the plaintiff to request that the court modify the defendant's alimony payments. This is precisely what the plaintiff sought to do and what the trial court's July 9, 2020 memorandum of decision accomplished. Particularly, the court *modified* the original alimony order incorporated into the judgment of dissolution as to the amount, term, and conditions on the prospective modification of the defendant's alimony obligation.

The defendant further argues that "the order of the . . . Bankruptcy Court not to open the judgment was not respected in the decision of the Superior Court" and that the Bankruptcy Court's order did not permit an award of retroactive alimony. To start, the Bankruptcy Court's order did not prohibit the opening of the judgment of dissolution. Contrary to the defendant's argument, the order of the Bankruptcy Court expressly permitted the plaintiff to take "all actions necessary" to modify the defendant's alimony obligation, and there is no limitation that such modification be accomplished without opening the judgment that fixed the defendant's alimony payments. Likewise, there is nothing in the Bankruptcy Court's order prohibiting the plaintiff from seeking, and the court from ordering, that the defendant pay retroactive alimony. Instead, the Bankruptcy Court's order clearly provides the plaintiff the ability to seek to "establish," "modify," or "enforce" the defendant's alimony obligation. The defendant's argument that the court lacked authority to modify retroactively his alimony obligation is belied by the terms of the Bankruptcy Court's order. See, e.g., *U.S. Bank Trust, N.A.* v. *Giblen*, supra, 190 Conn. App. 227–28 (rejecting defendant's narrow interpretation of Bankruptcy Court order terminating stay as contrary to unambiguous and clear purpose of order permitting committee to pursue approval of foreclosure sale). Therefore, we conclude that the court's modification of the defendant's alimony obligation and its opening of the judgment of dissolution did not violate the automatic bankruptcy stay.

III

The defendant's final claim is that the court abused

its discretion by increasing his alimony obligation and ordering retroactive alimony to the date on which the plaintiff filed her motion for modification.[14] In support of this claim, the defendant specifically argues that the evidence presented by the plaintiff at the hearing on her motion to modify established that modification was not warranted because the defendant "is bankrupt and [the plaintiff] is financially healthy." We disagree.

The following additional facts and procedural history are relevant to our resolution of the defendant's third claim. On January 15, 2014, the parties first filed financial affidavits in this dissolution proceeding. The plaintiff's first financial affidavit shows that she had a total net weekly income of $198.88 (gross income minus deductions), total weekly expenses of $1456.94, total cash value of assets of $1,769,607.41, and total liabilities of $12,129.46. The defendant's first financial affidavit shows that he had a total net weekly income of $768 (gross income minus deductions), total weekly expenses of $2661, total cash value of assets of $1,192,450, and total liabilities of $524,604.

On December 5, 2019, the court held an evidentiary hearing on the plaintiff's motion to modify alimony. Only the plaintiff and her counsel appeared; the defendant's motion for a continuance was denied, and he stated in an e-mail to the caseflow coordinator that he would not be in attendance because his wife was ill. At the hearing, the plaintiff introduced as full exhibits her December 5, 2019 financial affidavit and the defendant's April 17, 2019 schedule of assets, liabilities, and creditors filed in his bankruptcy proceeding. The plaintiff's financial affidavit shows that she had a net weekly income of $394 (gross income minus deductions), total weekly expenses and liabilities of $1571, total cash value of assets of $702,779, and total liabilities of $70,183. The defendant's bankruptcy filing shows that he had approximately $2000 per week in income, and he shares with his current wife, Hillary Styer, approximately $1500 of weekly expenses, $1.2 million of assets, and $1 million of liabilities.[15] The plaintiff testified that the defendant's $1 alimony obligation prescribed by the judgment of dissolution was founded on the defendant's fraudulent concealment of substantial assets. The plaintiff testified that the defendant failed to disclose at the time of the judgment of dissolution: (1) a $69,000 transfer to the defendant from one of his business entities, HGAE, LLC; (2) his ownership of real property in Gettysburg, Pennsylvania; (3) that his bank account had more than $5000; (4) that he transferred approximately $28,000 to HGAE, LLC; (5) that he withdrew $45,000 from a "supposedly frozen" Morgan Stanley account; and (6) that he had a total income of $426,000 the year of the judgment of dissolution. The plaintiff then requested $2000 per month of alimony retroactive to December 1, 2015, which is the date that she served her motion to modify. See footnote 9 of this opinion.

On July 9, 2020, the court issued a memorandum of decision opening the judgment of dissolution. The court then removed from article 2 of the agreement the provision that alimony was payable only for five and one-half years and the restriction that any future modifications of alimony be based solely on employment income. The court also stated that "the remainder of the terms of article 2 of the agreement were to remain in full force and effect."

In the same memorandum of decision, the court also granted the plaintiff's motion to modify alimony and ordered the defendant to pay the plaintiff $2000 per month in alimony, which was retroactive to the service of her motion to modify on December 1, 2015. The court relevantly held that "the plaintiff has carried her burden of proof to show by a preponderance of the evidence that there was a substantial change in circumstances" and that the "statutory criteria in General Statutes § 46b-82" were satisfied. On the basis of the plaintiff's testimony at the hearing, the court found that the defendant intentionally had concealed substantial assets at the time of the judgment of dissolution and that his assets "were significantly greater" than what he had represented. The court further found that the "plaintiff's income and assets decreased significantly" from the date of the judgment of dissolution because it "no longer include[d] Social Security disability payments," and her liability "sharply increased" because the defendant failed to pay his share of a joint portfolio loan. The court also stated that, although it did not have many of the defendant's financial records because he had obstructed the plaintiff's discovery attempts, the defendant's bankruptcy filing established that "there has been a substantial increase in the defendant's earnings and earning capacity which warrants an upward modification of the current alimony award."

We next set forth the standard of review and legal principles relevant to our resolution of this claim. We review for an abuse of discretion the court's modification of alimony as well as whether the court properly made such a modification retroactive. See *Misthopoulos* v. *Misthopoulos*, 297 Conn. 358, 372, 999 A.2d 721 (2010) (abuse of discretion standard applies to review of modification of alimony award); *Callahan* v. *Callahan*, 192 Conn. App. 634, 648, 218 A.3d 655 (abuse of discretion standard applies to review order of retroactive alimony), cert. denied, 333 Conn. 939, 218 A.3d 1050 (2019).

To modify an existing alimony obligation pursuant to § 46b-86, "a court must determine whether there has been a substantial change in the financial circumstances of one or both of the parties. . . . Second, if the court finds a substantial change in circumstances, it may properly consider the motion and, on the basis of the § 46b-82 criteria, make an order for modification. . . .

The court has the authority to issue a modification only if it conforms the order to the distinct and definite changes in the circumstances of the parties." (Internal quotation marks omitted.) *Olson* v. *Mohammadu*, 310 Conn. 665, 673–74, 81 A.3d 215 (2013). First, "the moving party must demonstrate that circumstances have changed since the last court order such that it would be unjust or inequitable to hold either party to it. Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstance warrants a modification of the existing order." (Internal quotation marks omitted.) Id., 672. Second, § 46b-82 "require[s] the court to consider the needs and financial resources of each of the parties and their children, as well as such factors as the causes for the dissolution of the marriage and the age, health, station, occupation, employability and amount and sources of income of the parties." (Internal quotation marks omitted.) Id., 673.

To render an award of retroactive alimony pursuant to § 46b-86, " 'there is no bright line test' "; *Callahan* v. *Callahan*, supra, 192 Conn. App. 649; instead, a court may consider a series of common-law factors, including "the long time period between the date of filing a motion to modify, or . . . the contractual retroactive date, and the date that motion is heard . . . . The court may examine the changes in the parties' incomes and needs during the time the motion is pending to fashion an equitable award based on those changes. . . . Moreover, § 46b-86 (a) accords deference to the trial court by permitting it to make a modification . . . retroactive to *any* period during which there is a pending motion for modification." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id.; see also *Olson* v. *Mohammadu*, supra, 310 Conn. 686 n.16.

In the present case, the court did not abuse its discretion by increasing the defendant's alimony obligation and ordering that he pay retroactive alimony. The court fully considered the change in the parties' financial circumstances since the judgment of dissolution. Moreover, it was no longer restricted by the limitations within article 2 of the parties' agreement because the court had opened that judgment and removed those limitations.[16] The record indicates that, since the judgment of dissolution, the plaintiff's total cash value of assets decreased from $1,769,607.41 to $702,779. The plaintiff's evidence further established that her net weekly income no longer included Social Security payments, nor dividend income from the parties' financial management accounts due to the defendant's failure to pay the corresponding portfolio loan. On the other hand, the defendant's financial circumstances improved since the time of the judgment of dissolution, as his weekly income increased by approximately $1200 and he now shares with his current wife $1000 less weekly

expenses. The court's modification also is supported by the defendant's concealment of substantial assets at the time of dissolution, which rendered his original $1 per month alimony obligation inequitable. The fact that the defendant filed for bankruptcy, standing alone, is not a sufficient ground for him to avoid paying alimony. See, e.g., *Norberg-Hurlburt* v. *Hurlburt*, 162 Conn. App. 661, 671 n.5, 133 A.3d 482 (2016) (filing of bankruptcy petition, standing alone, does not compel conclusion that party financially is unable to comply with domestic support orders). Thus, the record supports the court's determination that the financial resources of both parties substantially changed since the judgment of dissolution. See, e.g., *Nappo* v. *Nappo*, 188 Conn. App. 574, 590–91, 205 A.3d 723 (2019) (holding that trial court did not abuse its discretion in increasing party's alimony obligation on basis of parties' changed financial circumstances). These circumstances demonstrate a substantial change sufficient to justify the increase of the defendant's alimony obligation, both retroactively and prospectively.

The defendant's argument essentially requests that this court reweigh on appeal the plaintiff's evidence introduced at the hearing. We decline to do so because the trial court is "the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . [When] there is conflicting evidence . . . we do not retry the facts or pass on the credibility of the witnesses. . . . The probative force of conflicting evidence is for the trier to determine." (Internal quotation marks omitted.) *Barlow* v. *Commissioner of Correction*, 343 Conn. 347, 359, 273 A.3d 680 (2022). This is particularly true in light of the fact that the defendant chose not to attend the hearing to present any evidence in opposition to the plaintiff's motion to modify. Thus, the defendant did not introduce any of his own evidence, present his own witnesses, cross-examine the plaintiff, or advance any evidentiary objections to the plaintiff's testimony or exhibits. The defendant has had every opportunity to appear before the court and present any defense to the plaintiff's motion to modify.[17] Therefore, we conclude that the court did not abuse its discretion by increasing the defendant's alimony obligation and ordering retroactive alimony.[18]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant frames his first claim by stating in part that "the service of process by marshal does not comport with due process under the United States and Connecticut constitutions," and his second claim by stating in part that the court's judgment "violated the supremacy clause of the United States constitution . . . ." The defendant's appellate briefs, however, contain no legal analysis to support his constitutional claims. We therefore decline to review the constitutional aspect of the defendant's claims because they are inadequately briefed. See, e.g., *Burton* v. *Dept. of Environmental Protection*, 337 Conn. 781, 803, 256 A.3d 655 (2021) (holding that claim is abandoned when it is presented by mere abstract assertion and without substantive analysis).

[2] In his appellate reply brief, the defendant requests, pursuant to Practice

Book § 60-2 (3), that this court strike certain documents and facts within the plaintiff's appellee brief and appendix on the ground that they were not part of the record before the trial court. Because our review is confined to the record that was before the trial court, "we shall disregard those portions of the plaintiff's appendix that do not conform to the guidelines set forth in the rules of practice." *Janusauskas* v. *Fichman*, 264 Conn. 796, 804 n.6, 826 A.2d 1066 (2003); see id. (declining to consider improper material within party's appendix); see also *State* v. *Richard W.*, 115 Conn. App. 124, 135 n.6, 971 A.2d 810 (same), cert. denied, 293 Conn. 917, 979 A.2d 493 (2009).

[3] Both the plaintiff's motion to modify alimony and motion to open remained pending for several years partially because the parties attempted to resolve those motions by way of a stipulation, dated April 26, 2018. In his principal appellate brief, the defendant alleges that he was unable to satisfy his obligations pursuant to this stipulation because he was unable to obtain the required funds.

[4] On December 3, 2019, the defendant filed a motion for a continuance of this hearing on the ground that his grandfather-in-law recently had passed away. The plaintiff filed an objection to this motion for a continuance, arguing that the funeral was scheduled for the day prior to the hearing, and the court, on December 3, 2019, denied the motion for a continuance. The defendant conversely stated in an e-mail to the caseflow coordinator that he would not be in attendance at this hearing because his wife was ill. The defendant raises no claim on appeal that the court improperly conducted the hearing in his absence.

[5] It is not entirely clear why the court initially determined that the plaintiff's service of her motion to modify was legally insufficient. Nevertheless, we infer from the record that the court's denial of the motion to modify was due to the fact that the plaintiff had not provided evidence that she had served the defendant with the motion to modify, which prompted the court to deny it without prejudice so that the plaintiff could produce evidence of service.

[6] The state marshal prepared both an original return of service and a supplemental return of service. The original return of service indicates that the state marshal sent the defendant the service, and the supplemental return of service provides that the service was received and signed for at the defendant's residence, as evidenced by the certified mail return receipts attached thereto.

[7] We construe the marshal's use of the phrase "undelivered" in his return of service to be a misnomer because the certified mail return receipts establish that service was made because the documents were received and signed for at the defendant's residence by Alicia Styer.

[8] The narrow issue presented by the defendant's first claim is whether the method of service used by the plaintiff complied with the statutory requirements of §§ 52-50 and 52-52 because there is no factual dispute that a state marshal sent the defendant service by certified mail and that the defendant received the service.

[9] The defendant does not raise on appeal the question of whether the court was permitted to modify alimony retroactive to the date that the marshal sent the notice by certified mail service to the defendant (December 1, 2015) or the date that Alicia Styer signed the certified mail return receipt at the defendant's residence (December 7, 2015). We note that, in related contexts, a party is determined to be served by certified mail when they receive actual notice of the mail, not when the certified mail is placed in the mail by a state marshal. See generally *Kinity* v. *US Bancorp*, 212 Conn. App. 791, 851–52,      A.3d      (2022).

[10] Our discussion of both §§ 52-50 and 52-52 in this decision is due to the fact that the defendant's claim challenges the court's conclusion that the plaintiff's service complied with both of these statutes. We note, however, that the defendant's appellate briefs appear to conflate the distinction between §§ 52-50 and 52-52. As explained herein, to be entitled to retroactive alimony, § 46b-86 requires that a party serve a motion to modify in compliance with § 52-50. In contrast, there is no requirement in § 46b-86 that a party also comply with § 52-52 to be entitled to retroactive alimony.

[11] When asked at oral argument before this court what would have constituted effective service in this circumstance, the defendant's counsel stated that the plaintiff should have hired a Pennsylvania service processor to provide the defendant in hand service of the notice. The defendant's position is unpersuasive. There is no language in §§ 52-50 and 52-52 providing that notice of a motion to modify may only be served in hand. We also emphasize that the court already had acquired personal jurisdiction over the defendant

at the outset of this dissolution action. Thus, we are not inclined to read into §§ 52-50 and 52-52 a service requirement as strict as the one that exists for the initiation of an action.

Moreover, the defendant's position is belied by the manner in which he chose to serve the plaintiff with notice of his own motion to modify alimony. On June 23, 2021, the defendant served notice of his June 8, 2021 postjudgment motion to modify alimony through the *same* method of service that he claims in this appeal was legally insufficient. Specifically, the defendant retained a Connecticut state marshal who sent by certified mail return receipt requested notice of the defendant's motion to modify to the plaintiff at her address in Patterson, New York.

[12] The defendant alternatively argues that the court incorrectly concluded that he did not timely file a motion to dismiss the plaintiff's motion to modify alimony. Particularly, the defendant challenges the court's determination that he waived any challenge to the improper service of the motion to modify because he failed to file a motion to dismiss within thirty days of filing an appearance pursuant to Practice Book § 10-30. We need not reach this issue in light of our conclusion that service was legally sufficient, regardless of whether the defendant was required to timely file a motion to dismiss the motion to modify. See, e.g., *Riley* v. *Travelers Home & Marine Ins. Co.*, 333 Conn. 60, 87 n.11, 214 A.3d 345 (2019) (declining to reach alternative argument).

[13] Although not squarely addressed by the Bankruptcy Court in its order, we note that 11 U.S.C. § 362 states that proceedings related to domestic support obligations statutorily are exempt from the automatic bankruptcy stay. Specifically, exempt from the automatic bankruptcy stay is a party's "commencement or continuation of a civil action or proceeding . . . for the establishment or modification of an order for domestic support obligations . . . ." 11 U.S.C. § 362 (b) (2) (A) (ii) (2018). Accordingly, the plaintiff's motion for relief from the bankruptcy stay may have been superfluous.

[14] The defendant frames his third claim and devotes one sentence of his appellate briefs to assert that the court abused its discretion by opening the judgment of dissolution and modifying the terms of article 2 of the agreement. This assertion is unaccompanied by any supporting analysis and, thus, we decline to review this claim on the ground that it is inadequately briefed. See, e.g., *MacDermid, Inc.* v. *Leonetti*, 328 Conn. 726, 749, 183 A.3d 611 (2018) (declining to review claim asserted in single sentence as inadequately briefed); *Studer* v. *Studer*, 320 Conn. 483, 493 n.11, 131 A.3d 240 (2016) (declining to review claim that was made in four sentences in appellate brief as inadequately briefed). Further, the defendant does not claim on appeal that the court's modification of his alimony obligation violated those terms of article 2 that survived the court's decision opening the judgment of dissolution. See, e.g., *State* v. *Elson*, 311 Conn. 726, 766, 91 A.3d 862 (2014) ("to receive review, a claim must be raised and briefed adequately in a party's principal brief, and . . . the failure to do so constitutes the abandonment of the claim").

[15] As the court recognized in its decision, its comparison of the parties' financial circumstances was hindered because "the plaintiff made every effort to obtain financial information from the defendant through ordinary and customary discovery," but the defendant had failed to "comply with numerous clear orders to provide the plaintiff with his personal financial information." Although the plaintiff's financial affidavit and the defendant's joint bankruptcy filing are different forms that do not contain the same inputs, definitions, or calculations, the defendant does not claim on appeal that the court improperly used these different forms to compare the parties' financial circumstances.

[16] We reiterate that the defendant failed to brief adequately his assertion that the court abused its discretion by opening the judgment of dissolution and modifying the terms of article 2 of the agreement. See footnote 14 of this opinion.

[17] In contrast to the opening statement in the defendant's principal appellate brief that he was deprived of the opportunity to present his case, the defendant repeatedly sought continuances to attend the court's hearings and conferences because his grandfather-in-law had passed away, and he was unwilling or unable to pay for new tires and brakes for his car, as well as spend $60 in gas to travel to Connecticut.

[18] We also are unpersuaded by the defendant's additional argument that the court's modification of his alimony obligation violates the strictures set forth in *Dan* v. *Dan*, 315 Conn. 1, 105 A.3d 118 (2014). In *Dan*, our Supreme Court held that an increase in the payee's income, standing alone, does not

justify reconsideration of a prior alimony award unless "the initial award was not sufficient to fulfill the underlying purpose of the award" or if other exceptional circumstances exist. Id., 15–17. The holding of *Dan* does not preclude the court's modification in the present case because the new alimony order was not based *only* on the increase of the defendant's income; rather, the change in circumstances included the defendant's increased income *combined with* the financial decline of the plaintiff and the defendant's concealment of assets at the time of the judgment of dissolution. Additionally, the court reasoned that the defendant's original $1 alimony obligation was insufficient because it was founded on his concealment of substantial assets. See *Cohen* v. *Cohen*, 327 Conn. 485, 499–500, 176 A.3d 92 (2018) (holding that *Dan* does not prohibit reconsideration of original alimony award based on substantial change in circumstances).

———————————————————